J-S09015-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KENNETH RUCH | : | |
| | : | |
| Appellant | : | No. 1032 EDA 2019 |

Appeal from the Judgment of Sentence Entered November 8, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002466-2017

BEFORE:   SHOGAN, J., LAZARUS, J., and COLINS, J.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED APRIL 13, 2020**

Appellant, Kenneth Ruch, appeals the judgment of sentence entered

following his conviction by a jury of two counts each of homicide by vehicle

and involuntary manslaughter.[1]  We affirm.

The trial court summarized the facts of the crimes as follows:

> On the night of January 28, 2017, at approximately 11:40
> p.m., Kimberly Phillips and Loraya Braxton, the victims, were
> crossing the street using the north crosswalk at the intersection
> of Roosevelt Boulevard ("the Boulevard") and Large Street.
> Phillips, who was 19 years old, and Braxton, who was 10 years
> old, were sisters who lived on the 600 block of Large Street.  This
> particular stretch of the Boulevard is a six[-]lane road, with three

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. § 3732(a) and 18 Pa.C.S. § 2504(a), respectively.  The jury also
acquitted Appellant of homicide by vehicle while driving under the influence
and driving under the influence (general impairment).  N.T., 6/14/18, at 15–
16.

lanes running northbound and three lanes running southbound, and the speed limit was 40 miles per hour ("mph"). However, [Appellant] was travelling southbound on the Boulevard toward its intersection with Large Street driving 82 mph in the middle lane.

As [Appellant], who was driving a Jeep Wrangler, approached the intersection, the light turned yellow and the vehicle in front of [Appellant] began to slow down. In response, [Appellant] accelerated the vehicle to 84 mph and passed the vehicle using the left lane. As he passed the vehicle and came to the crosswalk, [Appellant] hit the brakes of his vehicle, but it was too late. At a speed of approximately 74 mph, [Appellant's] vehicle struck Phillips and Braxton, who were still walking in the crosswalk, and the impact caused both of the victims' bodies to project through the air. Phillips' left leg was immediately severed from the rest of her body, and her body was discovered approximately 270 feet away from the crosswalk. She was pronounced dead at the scene. Braxton was rushed to St. Christopher's Hospital where she was pronounced dead thereafter. The medical examiner determined that the cause of death for both sisters was blunt impact trauma.

About a block and a half from the collision, [Appellant] pulled over his vehicle, which was now heavily damaged, near a Burger King on Van Kirk Street. Officer Brian James thereafter arrived on Van Kirk Street in a marked vehicle. Officer James left his vehicle and went to speak to [Appellant], who was now outside of his vehicle. [Appellant] told Officer James that he had hit two pedestrians with his vehicle. Believing that [Appellant] was intoxicated, Officer James placed [Appellant] under arrest for suspicion of driving under the influence and [Appellant] was transported to the Police Detention Unit at 750 Race Street.

After the collision, officers in the Philadelphia police department's Accident Investigation District conducted an investigation. Officers interviewed two eyewitnesses, who were driving in the vehicle that [Appellant] had passed just before the collision. Officer Paul Busch conducted an accident reconstruction, and determined that the cause of the collision was [Appellant's] high rate of speed, his improper passing of another vehicle, and his impairment.

Trial Court Opinion, 7/1/19, at 2–3 (internal citations to the record omitted).

Appellant was convicted by a jury on June 14, 2017, as described *supra*. At sentencing, which occurred on November 8, 2018, the trial court determined that the two convictions for involuntary manslaughter merged with the convictions for homicide by vehicle for purposes of sentencing. The trial court imposed consecutive terms of imprisonment of three and one-half to seven years for each homicide-by-vehicle conviction, for an aggregate sentence of seven to fourteen years of incarceration. Appellant filed a timely post-sentence motion challenging the discretionary aspects of sentence and weight of the evidence. While the post-sentence motion was pending, Appellant's counsel withdrew. Order, 11/14/18. New counsel was appointed on March 8, 2019, and the trial court denied the post-sentence motion on March 11, 2019. Appellant filed this timely appeal on April 8, 2019. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

I. Was the evidence insufficient to support the charges of involuntary manslaughter and homicide by vehicle in that it failed to establish [Appellant's] actions as the primary cause of the accident since the decedents had disregarded a crosswalk light signaling "stop" and instead walked into on-coming traffic?

II. Was the jury's verdict against the weight of the evidence since it established that the decedents' had caused the accident by disregarding a crosswalk light signaling "stop" and instead walked into coming traffic and, furthermore, the Commonwealth's evidence was fraught with inconsistencies between the testimony of witnesses Michael Altidor, Anthony Johnson, Trooper Saimir Shehu, Officer Paul Busch and Officer Robert Reppert as to the following points: (1) the exact location of the accident, (2) the type of transmission of [Appellant's] vehicle and whether said

- 3 -

transmission factored into the CDR report and (3) whether [Appellant] appeared to be intoxicated?

III. Was the trial court's departure from the aggravated range of the sentencing guidelines and imposition of the statutory maximum for each count of Homicide by Vehicle with said sentences running consecutive to each other an abuse of discretion, in that it failed to give adequate weight to [Appellant's] display of remorse and family support while overstating [Appellant's] criminal record and relying on numerous traffic offenses that were remote in time?

Appellant's Brief at 3.

Appellant's first issue assails the sufficiency of the evidence. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Green*, 203 A.3d 250, 253 (Pa. Super. 2019). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Colon-Plaza*, 136 A.3d 521, 525–526 (Pa. Super. 2016) (quoting *Commonwealth v. Robertson-Dewar*, 829 A.2d 1207, 1211 (Pa. Super. 2003)). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. *Commonwealth v. Tejada*, 107 A.3d 788, 792–793 (Pa. Super. 2015). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. *Commonwealth v. Mucci*, 143

A.3d 399, 409 (Pa. Super. 2016). Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Rogal*, 120 A.3d 994 (Pa. Super. 2015).

Appellant's sole claim is that his actions did not begin "the chain of causation" leading to the victims' deaths. Appellant's Brief at 13. He makes no argument regarding the elements of any crime. Rather, he suggests the chain of events leading to the accident began when victim Phillips, "while looking down at her phone, lead her younger sister into oncoming traffic against a crosswalk signal indicating 'stop'." *Id.* at 13–14. Appellant does not cite to the record in support of this claim.

Appellant's second issue assails the weight of the evidence. Appellant renews his claim that the victims' actions were the direct cause of their deaths. Appellant's Brief at 15. He also contends that the Commonwealth's case "was riddled with inconsistencies." *Id.* Appellant suggests that Mr. Altidor and Mr. Johnson testified inconsistently regarding the lane of traffic in which Appellant travelled. *Id.* He also posits that Trooper Shehu conducted his accident investigation "under the assumption that [Appellant's] vehicle was an automatic transmission." *Id.* at 16.

We have held that a motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence "concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Rayner*, 153 A.3d 1049, 1054 (Pa. Super. 2016) (quoting *Commonwealth v. Widmer*,

744 A.2d 745, 751 (Pa. 2000)). Our Supreme Court has described the standard applied to a weight-of-the-evidence claim as follows:

> The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, "the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence." An appellate court may not overturn the trial court's decision unless the trial court "palpably abused its discretion in ruling on the weight claim." Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is "so contrary to the evidence as to shock one's sense of justice."

*Commonwealth v. Williams*, 176 A.3d 298, 312 (Pa. Super. 2017) (quoting *Commonwealth v. Cash*, 137 A.3d 1262, 1270 (Pa. 2016) (internal citations omitted)). A trial court's determination that a verdict was not against the weight of the evidence is "[o]ne of the least assailable reasons" for denying a new trial. *Commonwealth v. Colon–Plaza*, 136 A.3d 521, 529 (Pa. Super. 2016) (quoting *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013)). A verdict is against the weight of the evidence where "certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003) (quoting *Widmer*, 744 A.2d at 751–752). "[W]e do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence . . . . Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion." *Williams*, 176 A.3d at 312.

- 6 -

Appellant's final issue relates to the discretionary aspects of his sentence. It is well settled that a challenge to the discretionary aspects of a sentence is a petition for permission to appeal, as the right to pursue such a claim is not absolute. ***Commonwealth v. Treadway***, 104 A.3d 597, 599 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence," by (1) preserving the issue in the court below, (2) filing a timely notice of appeal, (3) including a Rule 2119(f) statement, and (4) raising a substantial question for our review. ***Commonwealth v. Tejada***, 107 A.3d 788, 797 (Pa. Super. 2015) (citation omitted); ***Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa. Super. 2013).

In the instant case, Appellant filed a timely appeal, the issue was properly preserved in a post-sentence motion, and Appellant's brief contains a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence pursuant to Pa.R.A.P. 2119(f). Accordingly, we must determine whether Appellant has raised a substantial question that the sentence is not appropriate under 42 Pa.C.S. § 9781(b). ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010).

The determination of whether there is a substantial question is made on a case-by-case basis, and this Court will allow the appeal only when the appellant advances a colorable argument that the sentencing judge's actions

were either: (1) inconsistent with a specific provision of the Sentencing Code, or (2) contrary to the fundamental norms which underlie the sentencing process. ***Commonwealth v. Caldwell***, 117 A.3d 763, 768 (Pa. Super. 2015). "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." ***Commonwealth v. Knox***, 165 A.3d 925, 929 (Pa. Super. 2017) (quoting ***Commonwealth v. Tirado***, 870 A.2d 362, 365 (Pa. Super. 2005)).

Appellant asserts the trial court imposed an excessive sentence and erred in imposing a sentence beyond the aggravated range of the Sentencing Guidelines because it failed to give adequate weight to Appellant's remorse and overstated his criminal record. Appellant's Brief at 12. Thus, in effect, Appellant is asserting that the court imposed a sentence outside of the guidelines without specifying proper factors that prompted the upward departure. ***Id.*** This Court has held that claims of a sentencing court imposing a sentence outside of the standard guidelines without stating adequate reasons on the record presents a substantial question. ***Commonwealth v. Antidormi***, 84 A.3d 736, 759 (Pa. Super. 2014); ***see also Commonwealth v. Gooding***, 818 A.2d 546, 553 (Pa. Super. 2003) (substantial question raised where the appellant asserts the sentencing court failed to state reasons on the record to justify an upward departure from the Sentencing Guidelines).

Thus, we conclude that Appellant's claim presents a substantial question for our review.

The trial court has written a cogent, thorough, and reflective Pa.R.A.P. 1925(a) opinion addressing each of Appellant's issues with support from the certified record and applicable case law. For this reason, we affirm the judgment of sentence on the basis of the trial court's July 1, 2019 opinion.[2]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/20

---

[2] We direct the parties to attach a copy of the trial court's opinion in the event of future proceedings.



IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF     :   CP-51-CR-0002466-2017
PENNSYLVANIA       :
             :
    v.        :
             :
KENNETH RUCH      :

OPINION

BRONSON, J.              July 1, 2019

On June 14, 2018, following a jury trial before this Court, defendant Kenneth Ruch was convicted of two counts each of homicide by vehicle (75 Pa.C.S. § 3732(a)) and involuntary manslaughter (18 Pa.C.S. § 2504(a)). On November 8, 2018, the Court imposed consecutive terms of 3 ½ to 7 years of incarceration for each homicide by vehicle charge, for an aggregate sentence of 7 to 14 years of incarceration.[1] Defendant filed timely post-sentence motions, which the Court denied on March 11, 2019.

Defendant has now appealed from the judgment of sentence entered by the Court on the grounds that: 1) the evidence was legally insufficient to sustain the verdict; 2) the verdict was against the weight of the evidence; and 3) the Court abused its discretion at sentencing. Concise Statement of Errors Complained of on Appeal Filed Pursuant to Rule of Appellate Procedure 1925(b) ("Statement of Errors") at ¶¶ 1-3. For the reasons set forth below, defendant's claims are without merit and the judgment of sentence should be affirmed.



CP-51-CR-0002466-2017 Comm. v RUCH, KENNETH
Opinion

8295193801

---

[1] Due to merger, sentences were not entered on the convictions for involuntary manslaughter.

1

## I. FACTUAL BACKGROUND

At trial, the Commonwealth presented the testimony of Philadelphia police officers Brian James, David Soto, Robert Reppert, and Paul Busch, Philadelphia police Corporal Lisa Bachman, Pennsylvania State Trooper Saimir Shehu, Philadelphia deputy medical examiner Dr. Albert Chu, and Michael Altidor, Anthony Johnson, and Kimberly Branch. Defendant presented no evidence. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.

On the night of January 28, 2017, at approximately 11:40 p.m., Kimberly Phillips and Loraya Braxton, the victims, were crossing the street using the north crosswalk at the intersection of Roosevelt Boulevard ("the Boulevard") and Large Street. N.T. 6/12/2018 at 10, 13, 18, 43, 46; N.T. 6/13/2018 at 44. Phillips, who was 19 years old, and Braxton, who was 10 years old, were sisters who lived on the 600 block of Large Street. N.T. 6/12/2018 at 210, 213; N.T. 6/13/2018 at 61, 102-03. This particular stretch of the Boulevard is a six lane road, with three lanes running northbound and three lanes running southbound, and the speed limit was 40 miles per hour ("mph"). N.T. 6/13/2018 at 12; N.T. 6/13/2018 at 20. However, defendant was travelling southbound on the Boulevard toward its intersection with Large Street driving 82 mph in the middle lane. N.T. 6/12/2018 at 16-17, 36, 43, 45, 180.

As defendant, who was driving a Jeep Wrangler, approached the intersection, the light turned yellow and the vehicle in front of defendant began to slow down. N.T. 6/12/2018 at 15-16, 43; N.T. 6/13/2018 at 16. In response, defendant accelerated the vehicle to 84 mph and passed the vehicle using the left lane. N.T. 6/12/2018 at 14-16, 43, 45; N.T. 6/13/2018 at 56. As he passed the vehicle and came to the crosswalk, defendant hit the brakes of his vehicle, but it was too late. N.T. 6/13/2018 at 52-54. At a speed of approximately 74 mph, defendant's vehicle

2

struck Phillips and Braxton, who were still walking in the crosswalk, and the impact caused both of the victims' bodies to project through the air. N.T. 6/12/2018 at 15-16, 43; N.T. 6/13/2018 at 43, 47. Phillips' left leg was immediately severed from the rest of her body, and her body was discovered approximately 270 feet away from the crosswalk. N.T. 6/12/2018 at 19, 211; N.T. 6/13/2018 at 43. She was pronounced dead at the scene. N.T. 6/11/2018 at 95-96; N.T. 6/13/2018 at 13. Braxton was rushed to St. Christopher's Hospital where she was pronounced dead thereafter. N.T. 6/11/2018 at 96; N.T. 6/13/2018 at 13. The medical examiner determined that the cause of death for both sisters was blunt impact trauma. N.T. 6/12/2018 at 208-09, 213.

About a block and a half from the collision, defendant pulled over his vehicle, which was now heavily damaged, near a Burger King on Van Kirk Street. N.T. 6/12/2018 at 78-80, 93. Officer Brian James thereafter arrived on Van Kirk Street in a marked vehicle. N.T. 6/12/2018 at 79-80. Officer James left his vehicle and went to speak to defendant, who was now outside of his vehicle. N.T. 6/12/2018 at 81. Defendant told Officer James that he had hit two pedestrians with his vehicle. N.T. 6/12/2018 at 82. Believing that defendant was intoxicated, Officer James placed defendant under arrest for suspicion of driving under the influence and defendant was transported to the Police Detention Unit at 750 Race Street. N.T. 8/12/2018 at 86-88, 105.

After the collision, officers in the Philadelphia police department's Accident Investigation District conducted an investigation. Officers interviewed two eyewitnesses, who were driving in the vehicle that defendant had passed just before the collision. N.T. 6/11/2018 at 96-97; N.T. 8/12/2018 at 21, 47; N.T. 6/13/2018 at 24. Officer Paul Busch conducted an accident reconstruction, and determined that the cause of the collision was defendant's high rate of speed, his improper passing of another vehicle, and his impairment. N.T. 6/13/2018 at 11, 72.

3

## II. DISCUSSION

*A. Sufficiency of the Evidence*

Defendant first claims that the evidence was legally insufficient to sustain the verdict. Statement of Errors at ¶ 1. This claim is without merit.

In considering a challenge to the sufficiency of the evidence, the Court must decide whether the evidence at trial, viewed in the light most favorable to the Commonwealth, together with all reasonable inferences therefrom, could enable the fact-finder to find every element of the crimes charged beyond a reasonable doubt. *Commonwealth v. Walsh*, 36 A.3d 613, 618 (Pa. Super. 2012). In making this assessment, a reviewing court may not weigh the evidence and substitute its own judgment for that of the fact-finder, who is free to believe all, part, or none of the evidence. *Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011). The Commonwealth may satisfy its burden of proof entirely by circumstantial evidence. *Id.* Finally, "'[i]f the record contains support for the verdict, it may not be disturbed.'" *Commonwealth v. Adams*, 882 A.2d 496, 499 (Pa. Super. 2005) (quoting *Commonwealth v. Burns*, 765 A.2d 1144, 1148 (Pa. Super. 2000), *app. denied*, 782 A.2d 542 (Pa. 2001)).

### 1. Homicide by Vehicle

Under section 3732 of the Motor Vehicle Code, "[a]ny person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic . . . is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death." 75 Pa.C.S. § 3732(a).

4

Here, the Commonwealth contended that defendant violated the sections of the Motor Vehicle Code regarding speeding. *See* 75 Pa.C.S. §§ 3361-3362.[2] Accordingly, the Commonwealth was required to prove that: (1) defendant committed the underlying violation of sections 3361 and/or 3362; (2) defendant acted recklessly or with gross negligence by driving in a manner that violated sections 3361 and/or 3362; (3) the alleged victims are dead; and (4) defendant's violation of sections 3361 and/or 3362 was the direct cause of those victims' deaths. 75 Pa.C.S. § 3732(a); *see* Pa. SSJI §17.3732 (Crim. March 2014).

Defendant does not contest that his vehicle struck Kimberly Phillips and Loraya Braxton. Both Michael Altidor and Anthony Johnson testified that they saw a dark Jeep hit the two victims, and shortly after the collision, Officer Brian James encountered defendant standing next to a dark Jeep with significant damage. N.T. 6/12/2018 at 12, 50, 80-81. Further, Officer James testified that defendant told him that he was aware that he had hit two pedestrians with his Jeep. N.T. 6/12/2018 at 82. Rather, the defendant argues that he was not the direct cause of Loraya Braxton and Kimberly Phillips' deaths, "since the decedents' [sic] had disregarded a cross-walk light signaling "stop" and instead walked into on-coming traffic[.]" Statement of Errors at ¶ 1.

In order to be a direct cause of a death, "the defendant's Motor Vehicle Code violation must be a direct and substantial factor" in bringing about the death of the victims. *Commonwealth v. Petroll*, 696 A.2d 817, 823 (Pa. Super. 1997) (citations omitted). There can be more than one direct cause of death, and a defendant whose actions are a direct cause of a death may be criminally liable even though there are other direct causes. *See Commonwealth v. Nunn*,

---

[2] Section 3361 provides as follows: "No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection...." Section 3362 provides in pertinent part: "[N]o person shall drive a vehicle at a speed in excess of the following maximum limits: ... (3) Any other maximum speed limit established under this subchapter."

947 A.2d 756, 760 (Pa. Super. 2008) (citations omitted). A defendant's actions are not a direct cause of the death "if the actions of the victim[s] play such an independent, important, and overriding role" in bringing it about, "compared with the role of the defendant," that the defendant's "conduct does not amount to a direct and substantial factor" in bringing about the death. *See* Commonwealth *v. Ketterer*, 725 A.2d 801, 805 (Pa. Super. 1999) (stating trial court's jury instruction that included the foregoing, which was very similar to the Pennsylvania Suggested Standard Criminal Jury Instructions, was in "precise conformity to the existing law" regarding causation in criminal cases).

It is true that eyewitnesses Altidor and Johnson testified that the two victims were crossing the street as the southbound traffic signal was turning yellow, implying that the victims began to cross the street before the crosswalk signal allowed. *See* N.T. 6/12/2018 at 15-16, 43-46. Nonetheless, the evidence definitively established that defendant's conduct was a direct cause of the victims' deaths, and the victims' actions did not play such an independent, important, and overriding role so as to vitiate defendant's culpability.

Altidor and Johnson were both driving home from work in the same vehicle when they witnessed the collision. *See* N.T. 6/12/2018 at 8, 15, 41, 43. Altidor testified that as he and Johnson approached the intersection of Roosevelt Boulevard and Large Street, the light changed to yellow and Altidor began to stop his vehicle, which was in the middle lane. N.T. 6/12/2018 at 13-15. Both Altidor and Johnson testified that they then observed a vehicle's headlights in the rearview mirrors come up fast from behind them and move quickly to the left lane and pass them. N.T. 6/12/2018 at 16-17, 43-45. Both men then observed defendant's vehicle strike the two victims who were walking in the south crosswalk. N.T. 6/12/2018 at 15-16, 43, 45-46.

6

Altidor testified that as defendant's vehicle hit the victims in the crosswalk and continued through the intersection, the traffic light for defendant was red. N.T. 6/12/2018 at 15-16.

The Commonwealth also presented the expert testimony of Trooper Saimir Shehu and Officer Paul Busch, both of whom were accepted by the Court as experts in accident reconstruction. *See* N.T. 6/12/2018 at 162; N.T. 6/13/2018 at 10. Both experts testified about the data recovered from defendant's vehicle's crash data recorder ("CDR") in order to determine the speed of defendant's vehicle before and during the collision. Trooper Shehu explained that a CDR is a device equipped in most vehicles in the United States that tracks vehicle data such as speed, acceleration, braking, steering, and air-bag deployment before, during, and after a crash. N.T. 6/12/2018 at 163. According to the CDR data from defendant's vehicle, the vehicle was traveling at 82 mph five seconds before impact. N.T. 6/12/2018 at 180; Commonwealth Exhibit C-21. Officer Busch testified that the speed limit on this particular stretch of Roosevelt Boulevard was 40 mph. N.T. 6/13/2018 at 20. At 2.6 seconds before impact, the CDR data indicated that the vehicle was traveling at 84 miles per hour. N.T. 6/13/2018 at 56; Commonwealth Exhibit C-21. At one-tenth of a second before impact, the CDR data indicated that the vehicle was traveling at 74 mph. N.T. 6/13/2018 at 47; Commonwealth Exhibit C-21. The CDR's speed at impact is consistent with Officer Busch's own calculation, which was made before the CDR data was recovered, that the vehicle was traveling 73 ¼ mph at the time it made impact with the victims in the north crosswalk.[3] N.T. 6/13/2018 at 43-44, 46-47. Officer Busch testified that the vehicle's impact was so powerful that it caused the victims to project through

---

[3] There are two crosswalks at the intersection of Roosevelt Boulevard and Large Street. The north crosswalk is the crosswalk located directly after the stop bar, which is the solid white line where a driver heading southbound needs to stop when the traffic light is red. *See* N.T. 6/13/2018 at 23; Commonwealth Exhibit C-18-A-5. The south crosswalk on the other side of the intersection is directly in front of the traffic lights. *See* N.T. 6/12/2018 at 45-46; Commonwealth Exhibit C-18-A-5. As will be discussed in section II(B), below, Altidor and Johnson's testimony that the victims were standing in the south crosswalk when they were struck conflicted with Officer Busch's testimony that they were in the north crosswalk.

7

the air, and Phillips' body was found 270 feet away from the intersection. N.T. 6/13/2018 at 31-32, 43.

There was also evidence that established that defendant illegally changed lanes by crossing over solid white lines in order to pass Altidor's vehicle. Officer Busch testified that this stretch of Roosevelt Boulevard has solid white lines starting between 180-200 feet before the intersection, which is common for most intersections. N.T. 6/13/2018 at 19-20; *see* Commonwealth Exhibit C-18-A-1. Officer Busch explained that these lines prohibit vehicles from changing lanes and that they are a way to maintain safety before an intersection. N.T. 6/13/2018 at 19. The testimony of Altidor and Johnson that defendant's vehicle was behind them, quickly moved to the left lane, and then struck the two victims is consistent with defendant crossing the solid white lines. *See* N.T. 6/12/2018 at 16-17, 43-45. Thus, in addition to driving at a speed more than twice the posted speed limit, defendant also illegally changed lanes before his vehicle struck the two victims.

Finally, Officer Busch determined that, taking into account all of the evidence from this case, including the actions of the victims, the cause of the collision was "defendant's speed, his improper passing, and his impairment."[4] N.T. 6/13/2018 at 72. Further, he determined that, even though the victims entered the crosswalk early, if defendant had driven his vehicle at the posted speed limit and not been impaired, the victims would have lived. *Id.* In addition, there was evidence that even if defendant had been driving his vehicle as much as 10-15 mph over the speed limit, the victims still would have survived. Altidor testified that he was driving his

---

[4] The officer's reference to "impairment" pertained to his conclusion that defendant was driving under the influence of alcohol. However, defendant was acquitted of one count of driving under the influence ("DUI") (75 Pa.C.S. § 3802(a)(1)) and two counts of homicide by vehicle while driving under the influence (75 Pa.C.S. § 3735(a)). Prior to trial, the Court suppressed the results of a post-accident test of defendant's blood, so defendant's blood alcohol content was never revealed to the jury.

8

vehicle at around 50-55 mph as he approached the intersection, and that he was able to bring his vehicle to a stop as the victims crossed in front of him. N.T. 6/12/2018 at 25-26. Thus, the evidence established that the two victims would be alive if defendant had driven close to or slightly above the speed limit.

Accordingly, defendant's violation of section 3361 and/or 3362 of the Motor Vehicle Code was a direct and substantial factor in bringing about the deaths of Kimberly Phillips and Loraya Braxton. Therefore, the evidence was sufficient to support defendant's convictions for homicide by vehicle.

### 2. Involuntary Manslaughter

Involuntary manslaughter is a lesser included offense of homicide by vehicle. *See Commonwealth v. Pedota*, 64 A.3d 634, 635 n.1 (Pa. Super. 2013) (involuntary manslaughter and homicide by vehicle merge for purposes of sentencing). Accordingly, the evidence detailed above supporting the homicide by vehicle convictions was necessarily sufficient to also support the involuntary manslaughter convictions. In any event, due to merger, no sentence was entered on the involuntary manslaughter convictions.

### B. Weight of the Evidence

Defendant next claims that the verdict was against the weight of the evidence because it was "established that the decedents' [sic] had caused the accident by disregarding a cross-walk light signaling "stop" and instead walked into coming traffic," and because "the Commonwealth's evidence was fraught with inconsistencies between the testimony of witnesses Michael Altidor, Anthony Johnson, Trooper Saimir Shehu, Officer Paul Busch, and Officer Robert Reppert...." Statement of Errors at ¶ 2. This claim is without merit.

9

It is well-established that a new trial may only be granted by the trial court where the verdict was so contrary to the weight of the evidence as to "'shock one's sense of justice.'" *Commonwealth v. Rossetti*, 863 A.2d 1185, 1191 (Pa. Super. 2004), *app. denied*, 878 A.2d 864 (Pa. 2005) (quoting *Commonwealth v. Hunter*, 554 A.2d 550, 555 (Pa. Super. 1989)). Moreover, credibility determinations are solely within the province of the fact-finder, and "'[a]n appellate court cannot substitute its judgment for that of the finder of fact.'" *Commonwealth v. Taylor*, 63 A.3d 327, 330 (Pa. Super. 2013) (quoting *Commonwealth v. Shaffer*, 40 A.3d 1250, 1253 (Pa. Super. 2012)). In addition, "inconsistencies in eyewitness testimony are not sufficient to warrant a new trial on grounds that the verdict was against the weight of the evidence." *Commonwealth v. Jacoby*, 170 A.3d 1065, 1081 (Pa. 2017). Finally, in considering a claim that the trial court erred in refusing to find that a verdict was against the weight of the evidence, "'appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.'" *Taylor*, 63 A.3d at 330 (quoting *Shaffer*, 40 A.3d at 1253).

Here, as to defendant's argument that the decedents caused the collision by ignoring the crosswalk signal, as discussed in section II(A), above, the evidence plainly established that defendant was guilty of the charges for which he was convicted notwithstanding the conduct of the two sisters. *See* pp. 4-9, *supra*. The remainder of defendant's weight claim is premised upon the contention that the testimony of Commonwealth witnesses Michael Altidor and Anthony Johnson, who were eyewitnesses, as well as Trooper Saimir Shehu, Officer Paul Busch, and Officer Robert Reppert "was fraught with inconsistencies" as to the following points: "(1) the exact location of the accident, (2) the type of transmission of [defendant's] vehicle and whether said transmission factored into the CDR report and (3) whether defendant appeared to be intoxicated[.]" Statement of Errors at ¶ 2.

10

It is true that Altidor and Johnson testified that Phillips and Braxton were walking in the south crosswalk when they were struck by defendant's vehicle, and that Officer Busch, an expert in accident reconstruction, concluded that the point of impact occurred in the north crosswalk. N.T. 6/12/2018 at 15-16, 45-46; N.T. 6/13/2018 at 7-10, 44. However, Officer Busch testified that even if the collision occurred in the south crosswalk, the vehicle speed at impact would have been 62 mph and the projection distance of Phillips' body would have been 200 feet. N.T. 6/13/2018 at 48. Thus, if the jury determined that the victims were in the south crosswalk, defendant's vehicle was still traveling approximately 20 mph over the speed limit at that time. Coupled with the other evidence described above, the evidence would still have fully supported the jury's verdict. Therefore, the inconsistency in the evidence does not undermine confidence in the jury's decision.

As to the conflicting testimony regarding the type of transmission in defendant's vehicle and its effect on the CDR report, it is true that Trooper Shehu testified that the vehicle had an automatic transmission, while Officer Busch testified that the vehicle had a manual transmission. N.T. 6/12/2018 at 177; N.T. 6/13/2018 at 74-75. However, there was no evidence that the output of relevant data from the CDR or interpretation of that data was affected in any way by whether the vehicle had an automatic or manual transmission. Therefore, this inconsistency in the testimony was irrelevant.

Finally, defendant claims that the testimony of Altidor, Johnson, Trooper Shehu, Officer Busch, and Officer Reppert was inconsistent as to whether defendant appeared to be intoxicated. None of these witnesses, however, testified as to whether defendant appeared intoxicated. Only Officers Brian James and David Soto gave such testimony, and both said defendant appeared to be intoxicated.

11

Accordingly, the evidence fully supported the jury's verdict, and therefore, the Court did not abuse its discretion in denying defendant's motion for a new trial.

### C. Abuse of Discretion at Sentencing

Defendant's final claim is the following:

> Was the trial court's departure from the aggravated range of the sentencing guidelines and imposition of the statutory maximum for each count of Homicide by Vehicle with said sentences running consecutive to each other an abuse of discretion, in that it failed to give adequate weight to defendant's display of remorse and family support while overstating defendant's criminal record and relying on numerous traffic offenses that were remote in time[?]

Statement of Errors at ¶ 3. This claim is without merit.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of that discretion." *Commonwealth v. Anderson*, 552 A.2d 1064, 1072 (Pa. Super. 1988), *app. denied*, 571 A.2d 379 (Pa. 1989); *see Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007). Where the sentence falls outside the Sentencing Guidelines, the sentence should be affirmed on appeal unless it is "unreasonable." 42 Pa.C.S. § 9781(c)(3); *see Commonwealth v. Peck*, 202 A.3d 739, 746-47 (Pa. Super. 2019). "A court may depart from the guidelines 'if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community.'" *Peck*, 202 A.3d at 746 (quoting *Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008)). The factual basis and reasons for the departure must be stated on the record. *Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa. Super. 2014).

As to consecutive sentences, "[l]ong standing precedent of [the Superior] Court recognizes that [the Sentencing Code] affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to

12

sentences already imposed." *Commonwealth v. Marts*, 889 A.2d 608, 612 (Pa. Super. 2005). Accordingly, the decision to sentence consecutively fails to raise a substantial question on appeal unless that decision "raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." *Commonwealth v. Mastromarino*, 2 A.3d 581, 587 (Pa. Super. 2010). Therefore, an appellate court will not disturb consecutive sentences unless the aggregate sentence is "grossly disparate" to the defendant's conduct, or "viscerally appear[s] as patently 'unreasonable.'" *Commonwealth v. Gonzalez-Dejusus*, 994 A.2d 595, 599 (Pa. Super. 2010).

Here, while defendant's sentences were upward departures from the guidelines, the sentences were well-justified for the reasons explained by the Court on the record during the sentencing hearing. In fashioning an appropriate sentence, the Court explicitly considered the following: everything presented throughout the history of the case; evidence presented during defendant's trial and pretrial proceedings, excluding the evidence that was suppressed; the information that was presented for and at sentencing, including defendant's pre-sentence report, the Commonwealth's sentencing memorandum, the mitigating information that was submitted on behalf of defendant, the testimony of defendant's supporters and letters from his supporters, and the victim impact statements from the victim's family and friends; the sentencing guidelines; defendant's rehabilitative needs; the need for the protection of the public; and the gravity of the offense in relation to the impact on the victim and on the community.[5] N.T. 11/8/2018 at 44-48. Specifically, the Court noted that defendant's prior record score of zero understated defendant's

---

[5] Applying the Seventh Edition of the Sentencing Guidelines, the parties agreed that defendant had a prior record score of zero and that homicide by vehicle had an offense gravity score of 6. N.T. 11/8/2018 at 4-5. The parties also agreed that, using the Standard Matrix, the charge of homicide by vehicle was assigned a standard range of 3 months to 12 months, plus or minus 6 months for the aggravated and mitigated ranges, respectively. N.T. 11/8/2018 at 5.

past misconduct, which included a DUI conviction and numerous other traffic violations. N.T. 11/8/2018 at 47. Moreover, despite defendant's prior conviction for DUI and completion of alcohol safety school, he admitted that he had been drinking on the night of the collision, and he was driving more than double the posted speed limit at that time.[6] *Id.* Furthermore, the Court noted that defendant did not stop and render aid after he struck the victims with his vehicle. N.T. 11/8/2018 at 47-48. Although the Court explicitly recognized multiple mitigating factors, such as defendant's acceptance of responsibility, the remorse he showed for his actions, his family and community support, and the testimony of his son at the sentencing hearing, the Court noted that the totality of defendant's conduct that day demonstrated extreme indifference to the value of human life, and fully justified a departure from the guidelines. N.T. 11/8/2018 at 46-48. In addition, consecutive sentences were appropriate because there were two separate victims, aged 10 and 19, each of whom had her life ended at a very young age. N.T. 11/8/2018 at 46, 48.

Accordingly, the record demonstrates that the sentence imposed by the Court was not grossly disparate to defendant's conduct nor unreasonable. *See Peck,* 202 A.3d at 746-47; *Gonzalez-Dejusus,* 994 A.2d at 599. Accordingly, the sentence should be affirmed on appeal.

## III. CONCLUSION

For all of the foregoing reasons, the Court's judgment of sentence should be affirmed.

BY THE COURT:

_____
GLENN B. BRONSON, J.

---

[6] Defendant's Presentence Investigation Report states that "[h]e admitted drinking the night of the current offense, but he denied being intoxicated." Presentence Investigation Report, filed 10/31/2018, at p. 1.

14

**Commonwealth v. Kenneth Ruch**
**Type of Order: 1925(a) Opinion**

CP-51-CR-0002466-2017

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P. 114:

**Defense Counsel/Party:**

James Berardinelli, Esq.
1600 Locust Street
Philadelphia, PA 19103

Type of Service:  ( ) Personal (**X**) First Class Mail ( ) Other, please specify:

**District Attorney:**

Lawrence Goode, Esq.
Interim Supervisor, Appeals Unit
Office of the District Attorney
Three South Penn Square
Philadelphia, PA 19107-3499

Type of Service:  ( ) Personal ( ) First Class Mail (**X**) Other, please specify: *Interoffice Mail*

**Additional Counsel/Party:**

Joseph D. Seletyn, Esquire
Prothonotary
Office of the Prothonotary
530 Walnut Street, Suite 315
Philadelphia, PA 19106

Type of Service:  ( ) Personal (**X**) First Class Mail ( ) Other, please specify:

Dated: **July 1, 2019**

_Thomas Smith_
Thomas R. Smith
Law Clerk to Hon. Glenn B. Bronson